Filed 6/15/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIAN RODAS-GRAMAJO,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>MARIN COUNTY,<br><br>    Respondent;<br><br><br>THE PEOPLE,<br><br>    Real Party in Interest. | A166375<br><br><br>(Marin County<br>Super. Ct. No. SC214415A) |

Following a preliminary hearing, petitioner Brian Rodas-Gramajo was charged with various crimes alleged to have been committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members" — a gang enhancement triggering increased punishment. (Pen. Code, § 186.22, subd. (b)(1); undesignated statutory references are to this code.) While he awaited trial, the Legislature enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), altering the requirements for imposing the enhancement. As relevant here, the legislation altered the proof necessary to establish the existence of a criminal street gang. (§ 186.22, subd. (e)(1), as amended by Stats. 2021, ch. 699, § 4.)

1

Rodas-Gramajo thereafter moved to dismiss the gang allegation pursuant to section 995, arguing the People failed to present sufficient evidence establishing the existence of a criminal street gang under amended section 186.22. The trial court denied the motion. Instead, consistent with section 995a, it reopened the preliminary hearing to allow the People to proffer additional evidence to satisfy the new gang enhancement elements. Rodas-Gramajo sought a writ of mandate to compel the court to set aside the information; we summarily denied the petition.

The California Supreme Court granted Rodas-Gramajo's petition for review and remanded the matter to this court with directions to vacate our decision and to issue an order to show cause why he is not entitled to dismissal of the gang enhancement allegations. (*Rodas-Gramajo v. Superior Court*, review granted Jan. 25, 2023, S277862.) In addition, we requested supplemental briefing by both parties on, among other issues, whether section 995 is the appropriate vehicle to challenge an information when the Legislature subsequently changes the elements of a charge or enhancement. We conclude Rodas-Gramajo properly used a section 995 motion to dismiss his information, but the missing evidence supporting the amended elements constituted "minor errors of omission" for which section 995a remand was appropriate. Accordingly, we deny the writ.

## BACKGROUND[1]

In October 2020, the victim was entering his residence in San Rafael when three people, including Rodas-Gramajo, confronted him. One of the men, Jesus Mendez-Munoz, lowered his shirt collar to reveal an "X8" neck tattoo, affiliated with the 18th Street gang. Rodas-Gramajo asked the victim

---

[1] The following facts are from the preliminary hearing reporter's transcript, but they have not been conclusively established for all purposes.

2

to "represent himself"— that is, asked whether he was a gang member, a rival gang member, or if he wanted to be a gang member — and called him a "snitch." The three men began to beat and kick the victim, bloodying his face. Although the victim was not a gang member, he wore blue bandana shoelaces and a Raiders football team lanyard, both of which were associated with the 18th Street gang.

At the preliminary hearing, a police officer testified as a criminal street gang expert. He described the 18th Street gang — also known as Canal Street Gangsters or 18th Street — as a subset of the Sureño street gang operating in San Rafael. The gang has thousands of members and is associated with the number 18 in any form or symbol, such as "XV3" or "XVIII," as well as the colors blue, black, and attire affiliated with the Raiders. The 18th Street gang engages in criminal activity, such as assault with deadly weapons, criminal threats, selling drugs, and vandalism. The officer testified that assaulting a person benefits the gang by creating a reputation for violence. According to the officer, wearing gang attire when not a member of a gang is a sign of disrespect that actual gang members find problematic. Assaults build the gang's credibility and respect in the community. Violence is also used to deter people from reporting crimes.

The officer opined Rodas-Gramajo is a member of the 18th Street gang. Indeed, two months after the October 2020 attack, Rodas-Gramajo registered with the police department as an 18th Street gang member, noting he had been a member since he was 13 years old.[2] (§ 186.30.) A different officer also identified two predicate offenses committed by known 18th Street gang

---

[2] A person with a gang-related conviction, enhancement, or finding at disposition or sentencing must register with local police within 10 days of release from custody. (§ 186.30.)

members — a 2017 assault committed by Rodas-Gramajo and Dixon Hernandez-Gonzalez, and a July 5, 2019, assault committed by Ashley Myers. According to the officer, the victim in the 2017 assault was a known member of the Norteño street gang, a Sureño rival. After the preliminary hearing, Rodas-Gramajo was charged with felony assault by means likely to cause great bodily injury. (§ 245, subd. (a)(4).) The complaint further alleged he committed the offense with the specific intent to promote, further, and assist in criminal conduct by members of a criminal street gang and for the benefit of the 18th Street gang. (§ 186.22.)

Assembly Bill 333 became effective on January 1, 2022, while Rodas-Gramajo awaited trial. Under former section 186.22, the existence of a "criminal street gang" was established by having (1) an ongoing association of three or more persons with a common name, identifying symbol or sign; (2) one of the group's primary activities be committing one or more statutorily enumerated criminal offenses; and (3) the members individually or collectively engage or engaged in a pattern of criminal gang activity. (Former § 186.22, subd. (f).) Demonstrating a "pattern of criminal gang activity" required establishing the commission of two or more enumerated offenses, "provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." (Former § 186.22, subd. (e).)

As relevant here, Assembly Bill 333 amended the definition of a "criminal street gang." Now, proof of an "ongoing, *organized* association or group of three or more persons, whether formal or informal," whose members "*collectively* engage in, or have engaged in, a pattern of criminal gang activity" is required. (§ 186.22, subd. (f), as amended by Stats. 2021, ch. 699,

4

§ 4, italics added.)  Moreover, to establish a "pattern of criminal gang activity," there now must be proof of two or more enumerated offenses that "occurred within three years of the prior offense and *within three years of the date the current offense is alleged to have been committed*."  (§ 186.22, subd. (e)(1), italics added.)  The predicate offenses must have been "committed on separate occasions or by two or more *members*," rather than persons.  (*Ibid.*, italics added.)  Finally, the gang must derive more than a reputational benefit from both the predicate and charged offenses.  (*Ibid*.)  Examples of an acceptable benefit include "financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (§ 186.22, subd. (g), as amended by Stats. 2021, ch. 699, § 4.)

Based on Assembly Bill 333, Rodas-Gramajo moved to set aside the information pursuant to section 995.  He argued the preliminary hearing evidence was insufficient to prove the alleged criminal street gang collectively engaged in a pattern of criminal gang activity.  In addition, he argued there was no evidence the predicate offenses for establishing the pattern of criminal gang activity were committed by two or more gang members or that the benefit from those offenses was more than reputational.  Finally, there was no evidence, Rodas-Gramajo argued, the charged offense benefitted the gang in a manner that was more than reputational.

The People did not dispute there was insufficient evidence to satisfy the gang enhancement elements as amended by Assembly Bill 333 and instead requested the case be remanded to the magistrate to address the deficiencies under section 995a.  The additional anticipated evidence consisted of requesting the magistrate take judicial notice of a file previously used to prove a predicate offense, testimony by an officer about the facts of that

offense and conveying the perpetrator's admission to being a gang member, and testimony from the People's prior expert that the predicate and charged offense benefitted more than the gang's reputation. The prosecutor estimated presenting this additional information would take approximately one hour.

Based upon the prosecution's proffer, the trial court concluded the evidentiary omissions were minor and ordered limited remand under section 995a; it denied the motion to set aside the information.

## DISCUSSION

Rodas-Gramajo contends the trial court abused its discretion by reopening the preliminary hearing to permit the People to address the amended gang enhancement elements — amendments that retroactively apply to him since his case is not yet final — because the defects in the evidence were not minor errors of omission under section 995a. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344.) We disagree.

### I.

Under section 995, a court must dismiss an information if a defendant has been committed without reasonable or probable cause to believe they are guilty of the charged crime. (§ 995, subd. (a)(2)(B); *People v. Mower* (2002) 28 Cal.4th 457, 473.) A section 995 motion reviews the sufficiency of the information based on the record before a magistrate at a preliminary hearing. (*Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 269.) Defeating a section 995 motion to dismiss thus requires demonstrating the existence of each element of the charged offense. (*Thompson v. Superior Court* (2001) 91 Cal.App.4th 144, 148–149.) A court should set aside an information "only when there is a total absence of evidence to support a necessary element of the offense charged." (*People v. Superior Court* (*Jurado*) (1992) 4 Cal.App.4th

1217, 1226.) Charges that have been dismissed may be refiled once, but not twice. (§ 1387, subd. (a); *People v. Juarez* (2016) 62 Cal.4th 1164, 1167.)

As a preliminary matter — and as Rodas-Gramajo and the Attorney General concede in the supplemental briefing — a section 995 motion can be used to challenge an information when the Legislature subsequently changes the elements of a charge or enhancement. Such a motion may be appropriate when "changed circumstances are shown which have a significant bearing on the question whether a defendant was indicted or committed without probable cause." (*In re Kowalski* (1971) 21 Cal.App.3d 67, 70.) A "substantial change in the law" is one example of such "changed circumstances." (*Ibid.* [change in law making inadmissible much of the testimony considered by a magistrate was a changed circumstance]; see also *Menifee v. Superior Court* (2020) 57 Cal.App.5th 343, 349 [§ 995 motion could challenge charges and enhancements where California Supreme Court decision rendered evidence presented at the preliminary hearing inadmissible].)

Here, Assembly Bill 333 amended the elements of gang enhancements in section 186.22, " 'increas[ing] the threshold' " for imposing the enhancement, "with obvious benefit" to defendants. (*People v. Tran* (2022) 13 Cal.5th 1169, 1207.) Those amendments apply retroactively to the showing necessary to hold Rodas-Gramajo to answer on his gang enhancement allegation. (*Mendoza v. Superior Court* (2023) 91 Cal.App.5th 42, 48 (*Mendoza*).) As the parties agree, Assembly Bill 333 constituted a subsequent change in the law and rendered the evidence in this case insufficient to support the gang enhancement charges. The insufficiency of the evidence is evident from the "four corners" of the preliminary hearing transcript, and Rodas-Gramajo properly challenged his information pursuant to section 995. (*Merrill v. Superior Court* (1994) 27 Cal.App.4th 1586, 1595.)

7

Next, Rodas-Gramajo's writ challenging the denial of his section 995 motion is timely. Appellate review of a section 995 motion is authorized if the motion was filed within 60 days of a defendant's arraignment. (§ 1510; *Fleming v. Superior Court* (2010) 191 Cal.App.4th 73, 103.) Rodas-Gramajo concedes he did not satisfy this time limit — he was arraigned on March 11, 2021 and did not file the section 995 motion until July 14, 2022. Pretrial appellate relief is nonetheless available since he demonstrates the lack of an opportunity to raise any evidentiary deficiencies due to Assembly Bill 333 within 60 days of his arraignment. (*Fleming*, at p. 103 [lack of awareness of an issue is another exception to § 1510's time limit].) Assembly Bill 333 became effective January 1, 2022, a date already well beyond the 60-day time limit. (Stats. 2021, ch. 699, § 4.) Although the People insist Rodas-Gramajo was required to promptly file his motion to dismiss within 60 days after these issues became ripe on January 1, 2022, they fail to cite anything to support this assertion. (Compare with *Fleming*, at pp. 103–105 [petitioner fulfilled "no opportunity" exception where § 995 motion was filed more than two years after arraignment since counsel must read and digest lengthy grand jury transcripts and exhibits even though record was finalized prior to arraignment].)

## II.

Nevertheless, dismissing Rodas-Gramajo's information based on the subsequent legislative changes is unnecessary. On this record, remand for further preliminary proceedings under section 995a is appropriate. That statute confers the court with discretion to reopen a preliminary hearing without dismissing the action, refiling a charge, and initiating an entirely new preliminary hearing if certain prerequisites are established. (§ 995a, subd. (b)(1); *Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 814.)

8

Specifically, the court may, upon the prosecution's motion, order a remand for further proceedings to correct "minor errors of omission, ambiguity, or technical defect" in the commitment. (§ 995a, subd. (b)(1).) Limited remand is only permitted where the errors "can be expeditiously cured or corrected without a rehearing of a substantial portion of the evidence." (*Ibid*.) Whether the court may order a limited remand thus depends on first identifying the type of omission or defect and then determining whether it can be cured expeditiously. (*Tharp v. Superior Court* (1984) 154 Cal.App.3d 215, 219 (*Tharp*).)[3] We review the trial court's findings for substantial evidence and review its decision to order further proceedings for abuse of discretion. (*Garcia*, at p. 814.)

Relying on *Burnett v. Superior Court* (1974) 12 Cal.3d 865, Rodas-Gramajo contends the trial court lacks discretion to reopen the preliminary hearing for additional evidence. We disagree. In *Burnett*, the People were attempting "to bolster the record so that probable cause for commitment might be more clearly demonstrated." (*Id.* at p. 871.) The court determined there was no statutory authority conferring a trial court with "discretion to remand the cause to the magistrate in lieu of making an order setting aside

_____

[3] In *Mendoza*, the Court of Appeal reviewed the denial of a section 995 motion — as here, the defendant sought to dismiss an information based on Assembly Bill 333's passage. (*Mendoza, supra*, 91 Cal.App.5th at p. 47.) The court concluded the prosecution could "move to reopen the preliminary hearing proceedings to present additional evidence on the amended elements of the gang-related charges." (*Id.* at p. 54.) Unlike here, however, the prosecution did not seek a remand, and the opinion's discussion of the propriety of that approach may have been dicta. (*Ibid*.) Even so, we find the reasoning in *Mendoza* persuasive. (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [giving dicta persuasive weight when it includes thorough analysis or compelling logic of the issue].) Moreover, there was a request for section 995a remand here, and we review the court's remand order based on the record.

the information if, in the court's opinion, the receipt of further testimony at a reconvened preliminary hearing would avoid the necessity of refiling a complaint and initiating a new prosecution." (*Id.* at p. 868.) Rather, under existing statutes, a cause could only be resubmitted to a magistrate "for the purpose of correcting a procedural irregularity or to correct an inadvertence which is clerical in nature." (*Id.* at p. 872.) But *Burnett* was decided before the Legislature amended section 995a and expressly authorized a remand to expeditiously cure minor errors. (*Burnett*, at p. 872; Stats. 1982, ch. 1505, § 4; *Caple v. Superior Court* (1987) 195 Cal.App.3d 594, 600–601 (*Caple*) [addition of § 995a, subd. (b) "changed, to some extent, the holding in *Burnett*"].) As even Rodas-Gramajo concedes, section 995a authorizes remand under certain circumstances.

Turning to the merits of Rodas-Gramajo's petition, authorizing a section 995a remand to establish facts satisfying the newly amended gang enhancement elements — both the charged offense and predicate offenses must provide more than a reputational benefit to the gang, and the predicate offenses establishing a pattern of criminal gang activity must have been committed by two or more gang members — was not an abuse of discretion. The People's failure to present this evidence — not required by former section 186.22 at the time of the preliminary hearing — constituted an error of omission. (*Tharp, supra*, 154 Cal.App.3d at p. 220 [defining omission as "the act of failing to include"]; *Mendoza, supra*, 91 Cal.App.5th at p. 58; cf. *People v. Sek* (2022) 74 Cal.App.5th 657, 668 [harmless error analysis applies where "the new element to the offense is introduced through the retroactive

10

application of a new law"].) It was not the result of "volitional decisions" or strategic choices. (*Tharp*, at p. 220.)[4]

More importantly, the omissions were minor, that is, ones that are "*comparatively* unimportant." (*Caple, supra,* 195 Cal.App.3d at p. 602.) That Assembly Bill 333 increased the threshold for imposing a gang enhancement does not automatically render the resulting evidentiary omissions major or significant, as Rodas-Gramajo contends.[5] (*Caple*, at p. 601.) Section 995a remand provisions may be utilized if the "omission is minor when considered in relation to the balance of the evidence required in order to hold the accused

---

[4] We acknowledge the failure to prove elements that did not exist at the time of the preliminary hearing is not something one would ordinarily think of as an "error." In the context of section 995a and the case law interpreting it, however, we conclude it was an error inasmuch as it was not the result of an intentional, strategic choice. (*Tharp, supra,* 154 Cal.App.3d at p. 220; *Mendoza, supra,* 91 Cal.App.5th at p. 58.) The prosecution did not intentionally omit — or forget to include — evidence supporting the new gang enhancement elements; such evidence was unnecessary at the time of the preliminary hearing. But the subsequent amendments retroactively rendered the failure to adduce the evidence a defect or error. If it were otherwise, and section 995a was not available, defendants whose criminal complaints had been previously dismissed would reap a windfall due to a postpreliminary hearing change in the law. (*Mendoza*, at p. 61; § 1387, subd. (a) [order terminating an action bars any other prosecution for the same offense if it was previously terminated].)

[5] In its opposition to Rodas-Gramajo's section 995 motion, the People stated "section [995a] would not typically apply to this case because *the evidentiary requirements under AB 333 are not minor*." (Italics added.) Rodas-Gramajo interprets this as a concession there was no "minor omission" here. We disagree. The statement suggests the People acknowledged Assembly Bill 333 made significant changes to the gang enhancement statute — an issue that is neither in dispute nor dispositive of the question here. (*People v. Renteria* (2022) 13 Cal.5th 951, 961, fn. 6; *Caple, supra,* 195 Cal.App.3d at p. 601.) Moreover, even if Rodas-Gramajo's interpretation is correct, "we are not 'bound' to accept a party's concession on a question of law." (*People v. Vivar* (2021) 11 Cal.5th 510, 524.)

to answer," rather than determining the "magnitude of the defect by its effect on the prosecution's case." (*Caple*, at pp. 601–602.) Accepting Rodas-Gramajo's interpretation would "eviscerate section 995a, subdivision (b)(1), by permitting its use only when the omitted evidence was unnecessary in the first instance." (*Caple*, at p. 602.)

Under the strong suspicion standard governing a section 995 motion, the People already provided the bulk of the required proof establishing a "criminal street gang" and a "pattern of criminal gang activity" to hold Rodas-Gramajo to answer for the gang enhancement allegation — that he committed a felony for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist criminal conduct by gang members. (§ 186.22, subd. (b)(1); *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072 [probable cause is "whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the defendant's guilt' "]; *Caple, supra*, 195 Cal.App.3d at p. 603.) The evidence indicates Rodas-Gramajo engaged in an assault with other known 18th Street gang members, including one perpetrator who flashed a gang sign. Evidence also mostly established that the 18th Street gang qualifies as a "criminal street gang" — "an ongoing, organized association or group of three or more persons . . . having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol. . . ." (§ 186.22, subd. (f); *People v. Lopez, supra*, 73 Cal.App.5th at p. 344.) The People's expert discussed at length the 18th Street gang's characteristics, such as its formation as a subset of the Sureño gang in the 1960s or 1970s, its membership numbering in the tens of thousands, their identifying signs and symbols, and the gang's criminal activities, such as assault and drug trafficking. Relative to the balance of the

12

already admitted gang-related evidence, the additional facts needed to satisfy the newly amended "pattern of criminal gang activity" elements — that two or more enumerated offenses were committed on separate occasions or by two or more members, that the predicate and charged offenses commonly benefited a criminal street gang, and that the common benefit from the offenses is more than reputational (§ 186.22, subd. (e)(1)) — are "comparatively unimportant." (*Caple*, at p. 602, italics omitted.)

First, the People already identified two assaults qualifying as predicate offenses.[6] (§ 186.22, subd. (e)(1)(A) [assault is an enumerated offense].) They presented evidence regarding a 2017 assault involving Rodas-Gramajo and Hernandez-Gonzalez, who the officer identified as an 18th Street gang member. In addition, the People's expert testified about a 2019 assault by Myers, another 18th Street gang member. Assuming the People must demonstrate this 2019 offense was committed by more than one gang member,[7] sufficient evidence satisfies this requirement. The trial court

[6] We reject Rodas-Gramajo's argument the People failed to prove gang members collectively engaged in a pattern of criminal activity. Collective engagement is established by identifying the requisite predicate offenses — two or more offenses among a list of enumerated criminal offenses that must have been committed by two or more gang members. (§ 186.22, subds. (e)(1), (f).) It is not a separate element. (*People v. Delgado* (2022) 74 Cal.App.5th 1067, 1088.)

[7] Currently, there is a split in authority on establishing two or more predicate offenses "committed on separate occasions by two or more members" — an element necessary for demonstrating gang members collectively engage in a pattern of criminal activity. (§ 186.22, subd. (e)(1).) In *People v. Delgado, supra,* 74 Cal.App.5th at page 1089, the court determined each predicate offense must be committed by more than one person. The court in *People v. Clark* (2022) 81 Cal.App.5th 133, review granted October 19, 2022, S275746, concluded "there are two options for establishing the requisite pattern: (1) prove two different gang members

13

already took judicial notice of Myers's court file, including the minutes indicating she pled guilty to felony assault and admitted a section 186.22, subdivision (b) gang enhancement. That same file documents the conviction of Ander Mazariegos, who also pled guilty to felony assault and admitted the gang enhancement on the same offense. (*People v. Meza* (2011) 198 Cal.App.4th 468, 477 [error was minor where it was remedied by taking judicial notice of court file in prior proceeding].) Rodas-Gramajo nonetheless insists substantial evidence would be needed to establish Mazariegos's 18th Street gang membership under the current law. Not so. An officer would simply (and briefly) testify Mazariegos admitted 18th Street gang membership. And in any event, Mazariegos's guilty plea to the gang enhancement presents circumstantial evidence regarding his gang membership. (*People v. Superior Court* (*Jurado*), *supra*, 4 Cal.App.4th at p. 1226 [existence of elements of charged crime may be demonstrated at a preliminary hearing by circumstantial evidence supporting reasonable inferences made by a magistrate].)

Second, the evidence necessary to establish the gang derived more than a reputational benefit from the predicate offenses is similarly minor. Regarding the 2017 assault, evidence presented at the preliminary hearing already established Rodas-Gramajo and Hernandez-Gonzalez targeted a known member of a rival gang. Since "targeting a perceived or actual gang rival" is a recognized common benefit to the gang under the Assembly Bill 333 amendments, additional testimony is unnecessary to establish the offense's benefit to the 18th Street gang was more than reputational.

---

separately committed crimes on two occasions; or (2) prove two different gang members committed a crime together on a single occasion." (*Id*. at p. 144.) For the purposes of this opinion, we assume that a predicate offense must have been committed by two gang members.

(§ 186.22, subd. (g).) For the 2019 offense, an officer would testify to limited details of the offense. Specifically, the victim's friend invited members of the 18th Street gang, including Myers and Mazariegos, to a hotel where they were drinking, the victim refused to let them in the room, the gang members kicked in the door, entered the hotel room, and personally struck him multiple times while yelling 18th Street gang slurs. Based on those facts, the People's expert would opine the assault was retaliatory — instigated because the victim acted disrespectfully towards the gang members — thus benefitting the 18th Street gang. (§ 186.22, subd. (g) [retaliation is a recognized common benefit].)

Third, preliminary hearing evidence already provided the lion's share of proof demonstrating the 18th Street gang derived more than a reputational benefit from Rodas-Gramajo's charged offense. Although the victim was not an 18th Street gang member, he possessed gang-affiliated paraphernalia, such as shoelaces made from a blue bandana and a lanyard key ring with the Raider's logo. Testimony also established that people who wear gang attire without being a gang member were seen by actual gang members as disrespectful. By asking the victim to "represent," Rodas-Gramajo demanded the victim disclose his gang affiliation. Rodas-Gramajo also called the victim a "snitch." Considered in its totality, there was sufficient evidence the assault was retaliatory or to target a perceived or actual gang rival. (§ 186.22, subd. (g); *People v. Mower, supra,* 28 Cal.4th at p. 473.) The People's offer of proof proposed additional expert opinion testimony, based primarily on this existing evidence, that the offense was in retaliation for the false representation of 18th Street gang membership and to deter others from similarly falsely representing themselves as gang members. The additional

15

showing to satisfy the amended common benefit element is minor compared to the existing evidence.  (*Caple*, *supra*, 195 Cal.App.3d at p. 602.)

The missing evidence does not go to the core of the gang allegation, contrary to Rodas-Gramajo's assertions.  The circumstances in *Garcia v. Superior Court*, *supra*, 177 Cal.App.4th 803 are not comparable.  In that case, the remand involved a substantial rehearing of evidence regarding a resisting an officer charge.  The preliminary hearing contained facts for some of the elements — the officer was performing his duties, and defendant knew or reasonably should have known there was an officer performing his duties. (*Id*. at p. 819.)  But there were no facts from which a magistrate could infer the defendant willfully resisted, delayed, or obstructed a peace officer.  (*Ibid*.) Testimony was thus necessary to establish the defendant was subject to a lawful detention, the officer attempted to detain the defendant, and the defendant ignored the attempt to lawfully detain him, all elements the court deemed the core conduct for the offense of resisting arrest.  (*Id*. at p. 821.) Because this was the heart of the case, the omission was not minor.  (*Ibid*.)

Here, to prove the gang enhancement, the People must establish Rodas-Gramajo committed a felony for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist criminal conduct by gang members.  (§ 186.22, subd. (b)(1).) Rather than going to the heart of the gang allegation, the missing information related to subcategories to establish the existence of a criminal street gang — whether the predicate offenses necessary to establish a pattern of criminal activity were committed by two or more gang members and whether the gang derived more than a reputational benefit from the predicate and charged offenses.  Unlike in *Garcia v. Superior Court*, reopening "the preliminary hearing proceedings in this context does not

16

permit the prosecutor a second chance to fill 'an evidentiary vacuum concerning the gravamen of the offense.' " (*Mendoza, supra,* 91 Cal.App.5th at p. 60.)  And in any event, as described above, the evidence offered at the preliminary hearing established virtually all of the necessary elements. (*People v. Meza, supra,* 198 Cal.App.4th at p. 477.)

Next, the trial court's finding that the errors could be corrected expeditiously without substantially rehearing the testimony finds support in the record.  (*Tharp, supra,* 154 Cal.App.3d at p. 219.)  The People stated the anticipated additional testimony would take approximately one hour.  (The People obviously could not control the length of Rodas-Gramajo's cross-examination, but that could be manipulated and extended to always defeat remand.)  This amount, compared to the approximately 156 transcript pages for the preliminary hearing, is relatively minor.  More importantly, as discussed above, the additional testimony would not be a relitigation of a substantial portion of the evidence.  (*Mendoza, supra,* 91 Cal.App.5th at p. 60; cf. *Loverde v. Superior Court* (1984) 162 Cal.App.3d 102, 106 [remand improper if it results in "a lengthy rehearing of a substantial portion of the evidence"].)  It would merely supplement the gang enhancement evidence already in the preliminary hearing record.  (*Caple, supra,* 195 Cal.App.3d at p. 602.)  We disagree with Rodas-Gramajo's assertion that obtaining this additional evidence would take as long or longer than the preliminary hearing.  Thus, the requirements for granting a section 995a remand were met — that is, there was a minor omission, and it could be cured expeditiously.

The People urge us to hold that a section 995a remand is the appropriate remedy at the pretrial stage whenever there is a change in the law between the preliminary hearing and the jury trial.  Such a rule would be

17

inappropriate, and we decline to so hold. "[D]etermining whether an omission is minor must be done on a case by case basis" (*Caple, supra*, 195 Cal.App.3d at p. 602) because "finding a bright line of demarcation to provide courts with guidelines in applying section 995a is an impossible task." (*Tharp, supra*, 154 Cal.App.3d at p. 219.) "The statute lends itself to an 'I know it when I see it' approach." (*Id.* at p. 219, fn. 8.) Here, only after examining the evidence already in the preliminary hearing record and comparing it to the information necessary to specifically support a reasonable suspicion Rodas-Gramajo engaged in his charged offense in association with and to benefit a criminal street gang, were we able to determine section 995a remand was appropriate. (*Mendoza, supra*, 91 Cal.App.5th at p. 60.)

We also reject Rodas-Gramajo's contention that the trial court failed to produce a remand order to guide the magistrate on remand as required by section 995a. Specifically, the court must "state in its remand order which minor errors it finds could be expeditiously cured or corrected." (§ 995a, subd. (b)(1).) During the hearing on Rodas-Gramajo's motion, the court identified the proffered evidence with specificity — "presentation of a second defendant in the same case for which the People already presented evidence, and expert testimony as to whether or not that crime by both defendants resulted in a benefit, beyond reputation, to the gang, and a witness testifying as to whether the present case resulted in a benefit to the gang beyond reputation." It then stated, "[t]he evidence [the People] may present at the preliminary hearing is limited to that that I've addressed here in terms of the witnesses that may testify. [¶] I'm not going to micro-examination [*sic*] how many exact questions the People can ask that witness." The court's remand instructions were sufficiently specific.

Finally, there is no merit to Rodas-Gramajo's argument that a section 995a remand violates the one-continuous-session rule under section 861. That section requires a preliminary examination to be completed at one session, otherwise the complaint shall be dismissed absent good cause for the postponement. (§ 861, subd. (a).) A "session" is " 'an actual sitting continued by adjournments in ordinary course from day to day, or over Sundays and holidays, but not interrupted by adjournment to a distant day.' " (*In re Karpf* (1970) 10 Cal.App.3d 355, 365.) That requirement "ensur[es] that one does not languish unnecessarily in custody, or under the cloud of a criminal complaint, without a judicial finding of probable cause." (*Stroud v. Superior Court* (2000) 23 Cal.4th 952, 965.) Here, there was a finding of probable cause before the new Assembly Bill 333 gang enhancements became effective and Rodas-Gramajo filed his section 995 motion to dismiss the information — there was no postponement. And in any event, by allowing "further proceedings" upon a motion by a prosecuting attorney, section 995a implicitly authorizes an exception to the one-continuous-session rule. (§ 995a, subd. (b)(1); *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805 [" 'A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions' "].) A contrary construction would entirely preclude a limited remand under any circumstances, nullifying section 995a.

## DISPOSITION

The petition for the writ is denied. The previously issued stay is dissolved at the issuance of the remittitur.

_____

Rodríguez, J.

I CONCUR:


_____

Petrou, J.

A166375

**TUCHER, P. J., Concurring in the result:**

The Legislature tightened the requirements for proving a gang enhancement after petitioner Brian Rodas-Gramajo's preliminary hearing, but before his trial on charges that included the gang enhancement. (See Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333); Pen. Code, § 186.22, subd. (b)(1); undesignated statutory references are to this code.) Not having anticipated at the preliminary hearing this change in the law, the People had not introduced evidence to prove certain elements now required for the gang enhancement, so petitioner brought a motion to dismiss the enhancement. The trial court correctly responded by ordering the matter remanded to the magistrate who had committed petitioner, to see whether the People could make good on their proffer of evidence establishing probable cause for the newly added elements. Without waiting for this hearing Petitioner sought extraordinary writ relief, asking that we enjoin any further proceedings in the case against him. I agree with my colleagues that the writ must be denied, but write separately to explain my reasoning.

In brief, I conclude that *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) entitles petitioner to have the gang enhancement struck unless, on remand to the magistrate, the People establish probable cause for the newly added elements. The trial court's limited remand to the magistrate was proper here for the same reason our Supreme Court has affirmed conditional reversals and limited remands with other defendants granted relief under *Estrada*. (See, e.g., *People v. Frahs* (2020) 9 Cal.5th 618, 637–640 (*Frahs*) [remand to determine eligibility for new mental health diversion]; *People v. Stamps* (2020) 9 Cal.5th 685, 700 (*Stamps*) [remand to enable trial court to exercise new discretionary authority to strike serious felony enhancement].) Although petitioner's new hearing will bear some resemblance to a hearing under

1

section 995a, subdivision (b)(1) (section 995a(b)(1)), I would not analyze petitioner's motion pursuant to the procedures and constraints of sections 995 and 995a.  In my view, the motion is a nonstatutory motion to dismiss pursuant to *Estrada*, and the taking of supplemental evidence is proper without regard to whether that evidence is "minor," as that term is used in section 995a(b)(1), or the other requirements of section 995a are met.

I.

"When new legislation reduces the punishment for an offense, we presume that the legislation applies to all cases not yet final as of the legislation's effective date."  (*People v. Esquivel* (2021) 11 Cal.5th 671, 673, citing *Estrada*, *supra*, 63 Cal.2d 740.)  As *Estrada* explains, "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper . . . ."  (*Id.* at p. 745.)

*Estrada* applies to Assembly Bill 333, rendering it retroactive to all cases not yet final as of January 1, 2022.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207; see also *People v. Lopez* (2021) 73 Cal.App.5th 327, 343; *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1126–1127.)  Where the evidence presented at trial is insufficient to sustain a gang enhancement under the current version of section 186.22, a defendant is entitled to have the enhancement reversed and the matter remanded for retrial under the current statute.  (*Tran*, at p. 1207; *Lopez*, at pp. 344–348; *Ramos*, at p. 1128.)  But the *Tran* line of cases addresses convictions obtained before the ameliorative amendments took effect.  They do not directly address the validity of a commitment order, lawfully issued before January 2022, for a defendant who has yet to face trial.

"The *Estrada* rule only answers the question of *whether* an amended statute should be applied retroactively. It does not answer the question of *how* that statute should be applied." (*Stamps*, *supra*, 9 Cal.5th at p. 700.) Supreme Court precedents supply some guidance in answering the "how" question. In *Stamps*, our Supreme Court applied *Estrada* to a statute that gave sentencing courts new discretionary authority to strike serious felony enhancements. (*Stamps*, at pp. 692, 699 [addressing Senate Bill No. 1393 (2017–2018 Reg. Sess.)].) The Court concluded the legislation was retroactive to a case in which, before the statute took effect, the defendant entered a plea agreement for a specified term that included such an enhancement. (S*tamps*, at p. 692.) *Stamps* held that, on the defendant's request, the case must be remanded for the trial court to decide whether to exercise its newly-granted discretion and strike the serious felony enhancement; but where the trial court decides to strike the prior, the prosecution may elect either to accept the resulting downward departure in sentence or to withdraw from the plea agreement. (*Id*. at p. 707.) Although the Legislature was presumed to have intended retroactive application of its ameliorative reform, the Court found no evidence "the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Stamps*, at p. 701.) The Estrada remedy therefore had to accommodate this legal principle.

In other cases applying *Estrada*, the Supreme Court has likewise prescribed limited remand, tailored to harmonize with existing principles of criminal procedure. For example, after a citizen's initiative altered the legal standard for transferring juveniles alleged to have committed crimes to adult court, the Supreme Court in *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299 (*Lara*) "endorsed a limited remand procedure . . . to allow the juvenile

court to conduct a transfer hearing under Proposition 57." (*Frahs*, *supra*, 9 Cal.5th at p. 637, citing *Lara*, at pp. 309–310.) If the juvenile court concludes at the new transfer hearing that the youth is properly transferred to a court of criminal jurisdiction, even under the standards of Proposition 57, then proceedings in criminal court must resume; otherwise the case proceeds in juvenile court. (*Lara*, at pp. 310–314 [endorsing remedy of *People v. Vela* (2017) 11 Cal.App.5th 68, 82, judg. vacated and cause remanded (2018) 229 Cal.Rptr.3d 345, reaffd. (2018) 21 Cal.App.5th 1099].) And in *Frahs*, after the Legislature enacted a mental health diversion statute, the Court affirmed conditional reversal of the conviction and sentence of a defendant seeking diversion under the statute. (*Frahs*, at pp. 637–640 [addressing § 1001.36].) The limited remand there was to allow the trial court to determine whether the defendant was an appropriate candidate for diversion; his conviction would be reinstated only if, on remand, he was found ineligible for diversion or he failed successfully to complete it. (*Frahs*, at p. 637.)

The common denominator in these cases is that defendants must be given the opportunity to avail themselves of ameliorative changes in the law in a manner that affords them complete relief, but also in a manner that respects as much as possible the procedural paths their cases took before the ameliorative statutes took effect. (See, e.g., *Stamps*, *supra*, 9 Cal.5th at p. 701.) Petitioner contends the appropriate procedural response in this case is to dismiss the information pursuant to section 995 because the requirements of section 995a(b)(1) are not met. I view that outcome as inconsistent with the *Estrada* line of cases, and I doubt the appropriateness of analyzing this case in terms of sections 995 and 995a since petitioner was lawfully committed on a showing of probable cause at the close of his preliminary hearing. I would instead treat petitioner's motion as a

4

nonstatutory motion to dismiss, rendering the constraints of section 995a(b)(1) irrelevant.

II.

A.

My reasons for doubting the applicability of sections 995 and 995a in providing relief under *Estrada* begin with the language of the statutes.

Section 995 authorizes a motion to set aside an indictment or information in specified circumstances, subject to the corrective mechanism of section 995a, subdivision (b). An information "shall be set aside" in either of two circumstances, if (*i*) "before the filing thereof the defendant had not been legally committed by a magistrate," or (*ii*) "the defendant had been committed without reasonable or probable cause." (§ 995, subd. (a).) Note the verb tense here. "[H]ad been committed" is the past perfect, meaning it refers to something that happened before an event that was also in the past. (§ 995, subd. (a)(2)(B) (§ 995(a)(2)(B)).) In our statutory scheme, a magistrate decides to hold over, or "commit[]," a defendant on the charged offenses at the conclusion of a preliminary hearing, after which an information may be filed. (§ 739.) So, the most natural reading of section 995(a)(2)(B) seems to me that an information must be set aside if "the defendant had been committed without reasonable or probable cause" at the time when the commitment order was originally made, before the filing of the information. (§ 995(a)(2)(B).) The question, in short, is whether the magistrate made a mistake in finding probable cause.

The language of section 995a confirms, rather than undermines, this backward-looking focus in section 995. Section 995a(b)(1) authorizes the court to remand a case for further proceedings to correct "minor errors of omission, ambiguity, or technical defect." I see no "error[]" in the failure of

5

the prosecution to introduce at the preliminary hearing evidence that was wholly unnecessary under the then-prevailing definition of the gang enhancement. At the preliminary hearing, the prosecutor's task was to establish probable cause for the crimes and enhancements it had alleged against Rodas-Gramajo, not to anticipate the Legislature's future decision to rewrite an applicable statute. And although the Attorney General points out that section 995a(b)(1) uses the present tense in conditioning remand on a finding that errors "are minor," that phrase changes nothing. Errors that were minor when made remain minor at the time when a section 995 motion is being considered. But a defendant who "had been committed" on a sufficient showing of probable cause was not committed in error.

Here, petitioner does not allege that he "had been committed without . . . probable cause." Rather, he alleges there is no *currently* valid holding order because Assembly Bill 333 amended the definition of the gang enhancement in a manner that renders the previously presented evidence insufficient. Petitioner's supplemental brief asserts that section 995's use of the past perfect tense "is intended to limit the *evidentiary* basis for the challenge," which is fixed at the preliminary hearing, but somehow is "not intended to limit the *legal* basis for the challenge." I see no basis in the statutory language for splitting the commitment order's legal and factual predicates in this manner. The statutory phrase "committed without reasonable or probable cause" refers to an application—or misapplication—of law to the evidence presented.

B.

Established precedent supports only the first half of petitioner's argument, that the evidentiary basis for a 995 motion is fixed at the preliminary hearing. Courts have long maintained that " '[t]he purpose of a

6

motion to set aside the accusatory pleading under Penal Code section 995 is to review the sufficiency of the . . . information on the basis of the record made before. . . the magistrate at the preliminary hearing.' " (*Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 269 (*Stanton*).)  In deciding such a motion, the court should confine its review "solely" to the preliminary hearing transcript (*id.* at p. 270), including as augmented pursuant to section 995a.  I have no quarrel with this proposition.  But, with only one exception, neither *Stanton* nor the other cases the parties cite support the other half of petitioner's argument: that the court should decide a section 995 motion using a definition of the crime that was not the law when the magistrate entered the commitment order.

The exception is a very recent decision that also addresses the retroactive effect of Assembly Bill 333 on a defendant who has had a preliminary hearing but not a trial.  (*Mendoza v. Superior Court* (2023) 91 Cal.App.5th 42 (*Mendoza*).)  The *Mendoza* court concludes, as do I, that the sufficiency of the preliminary hearing evidence should be assessed under current section 186.22 after the prosecution has had an opportunity to supplement it with evidence responsive to the statutory change.  (*Mendoza*, at p. 54.)  *Mendoza* rests this conclusion on two legal theories, concluding that any deficiency in the evidence resulting from the statutory change is a " 'minor error[] of omission' " under section 995a(b)(1), *or* that the same remedy is available under the court's authority to " 'remand the cause to the trial court for such further proceedings as may be just under the circumstances.' " (*Mendoza*, at pp. 58 [quoting § 995a(b)(1)] & 60 [quoting § 1260].)  As explained further below, I prefer the second of *Mendoza*'s theories.

7

Other than *Mendoza*, *In re Kowalski* (1971) 21 Cal.App.3d 67 is the case that comes closest to supporting petitioner's theory. *Kowalski* held that a trial court abused its discretion by granting the same section 995 motion to dismiss that another judge on the same court had previously denied because, *Kowalski* concluded, no change of circumstances justified the defendant in renewing his motion. (*Id*. at pp. 70–71.) That holding isn't relevant here because petitioner was not attempting to renew a previously rejected 995 motion. But in dicta, the *Kowalski* court hypothesized that changed "circumstances might exist . . . if there were a substantial change in the law between the time of the first and second motions, which made inadmissible much of the testimony considered by the grand jury or magistrate." (*Kowalski*, at p. 70.) Petitioner then cites *Menifee v. Superior Court* (2020) 57 Cal.App.5th 343 as an example of the circumstance *Kowalski* "predicted," in that *Menifee* involved a 995 motion filed after *People v. Sanchez* (2016) 63 Cal.4th 665 rendered inadmissible certain evidence from a preliminary hearing held before *Sanchez* was decided. (*Menifee*, at p. 356.) *Menifee* affirmed denial of the 995 motion only because sufficient evidence remained in the record after disregarding the evidence that was inadmissible under *Sanchez*. (*Menifee*, at pp. 349–350, 359–365.)

*Menifee* and the dicta in *Kowalski* do not support petitioner's argument that a new statute should be applied retroactively in deciding a section 995 motion. Both cases are unremarkable applications of the well-known principle that a new *judicial decision* generally applies in all cases not yet final because " '[a] judicial construction of a statute [or constitutional provision] is an authoritative statement of what the statute [or constitutional provision] meant before as well as after the decision of the case giving rise to that construction.' " (*McClung v. Employment Development Dept.* (2004)

8

34 Cal.4th 467, 474, quoting *Rivers v. Roadway Express, Inc.* (1994) 511 U.S. 298, 312–313; see also *People v. Guerra* (1984) 37 Cal.3d 385, 400 [" 'convictions should ordinarily be tested on appeal under the law then applicable, not the law prevailing at the time of trial' "]; *People v. Jeffrey G.* (2017) 13 Cal.App.5th 501, 507 [applying *Sanchez* on appeal, though it "significantly change[d]" the law that prevailed at trial].) Here, we confront a *legislative amendment* to the definition of the gang enhancement, a statutory change that applies retroactively only by virtue of *Estrada*. (See *Lara*, *supra*, 4 Cal.5th at p. 311 [*Estrada* informs application of " 'the default rule of prospective operation' " for statutes].) A new statute is generally not applied retroactively, absent clear direction from the Legislature that it intends retroactivity. (*People v. Brown* (2012) 54 Cal.4th 314, 319 [discussing this "time-honored principle"].) Thus, *Kowalski* and *Menifee* are not authority for applying a newly enacted statute in deciding a motion pursuant to section 995.

C.

Perhaps the most compelling reason to avoid section 995 as the vehicle for providing petitioner *Estrada* relief is not the poor fit with the language of section 995(a)(2)(B), nor the absence of case law supporting that approach. The biggest stumbling block is the set of constraints that section 995a imposes before the court may consider new evidence. I consider these constraints wholly inapplicable to providing relief under *Estrada*.

First, section 995a(b)(1) allows the trial court to take additional evidence (or to remand to the magistrate for that purposes) only if it finds the errors in an information to be "minor errors of omission, ambiguity, or technical defect which can be expeditiously cured or corrected . . . ." But, of course, the Legislature is free to make far-reaching changes in the definition

9

of an existing crime or enhancement, potentially necessitating significant additional evidence to establish probable cause for a defendant properly committed under prior law. In the face of such an ameliorative amendment, *Estrada* gives the defendant the right to seek dismissal, but not without the prosecution having the right to prevent dismissal if it has evidence establishing probable cause for the newly added elements. (See *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand"]; *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71 ["The People are entitled to an opportunity to prove" additional elements on remand]; *Kuhnel v. Appellate Division of Superior Court* (2022) 75 Cal.App.5th 726, 736, review granted June 1, 2022, S274000 ["*Estrada* teaches that we should avoid imposing punishment the Legislature has determined to be excessive [citation], but it does not require us to play 'gotcha' with the prosecution"].) I see no reason to require the prosecution to establish the additional evidence is "minor" and can be "expeditiously" presented, as long as it is necessary to address changes the Legislature has made to the definition of a crime or enhancement. (§ 995a(b)(1).)

Nor do I see any reason the procedures available for providing *Estrada* relief should vary from one case to another, depending on the amount of additional evidence necessary to meet new elements of an enhancement. And here, I would not stretch the definition of a "minor" omission until it reaches the quantum of testimony required. Petitioner's original preliminary hearing lasted two half-days, and the trial court hearing petitioner's motion assessed the presentation of evidence responsive to Assembly Bill 333 as requiring "half a day or less, including cross-examination." This is potentially half as

10

much testimony as the entire original preliminary hearing and not, in my view, comparatively minor.

Second, section 995a(b)(1) is a remedy that can be used only once. (See § 995a, subd. (b)(3) ["The procedure specified in this subdivision may be utilized only once for each information"].) Consider a case in which, before the passage of Assembly Bill 333, the prosecution discovered a truly minor error or omission in the preliminary hearing evidence and successfully employed section 995a(b)(1) to remedy it. In that hypothetical case, the prosecution would be foreclosed from reopening the preliminary hearing to introduce evidence that became essential after Assembly Bill 333 amended the definition of the enhancement. I see no reason to engraft section 995a(b)(1)'s single-use constraint onto an *Estrada* remedy.

Third, section 995a(b)(1)'s remedy is available only where the prosecution proceeds by way of information, rather than indictment. Although both charging documents can be challenged with a section 995 motion (§ 995, subd. (a)(1) & (2)), a hearing to take additional evidence under section 995a(b)(1) is available only to correct an information. (See § 995a, subd. (b)(1) ["Without setting aside *the information*, the court may, upon motion of the prosecuting attorney, order further proceedings to correct errors . . ." (italics added)].) Where section 995a addresses indictments, it is much less generous regarding error correction. The statute allows indictments to be corrected regarding "the names of the witnesses examined before the grand jury," but does not provide for correcting other errors of omission. (§ 995a, subd. (a).)

Based on these considerations, I would not rely on sections 995 and 995a to provide defendants the relief to which they are entitled under

11

*Estrada*, especially because I see a better alternative, readily available in our case law.

III.

In a variety of contexts, California courts have recognized an alternative to section 995 for pretrial dismissal of criminal charges. Where section 995 does not apply because, for example, "the deprivation of a substantial right is not shown in the transcript of the preliminary hearing, the nonstatutory motion to dismiss is the proper device to raise the issue." (*Stanton, supra*, 193 Cal.App.3d at p. 271.) A nonstatutory motion to dismiss is appropriate for bringing an equal protection challenge to criminal prosecutions motivated by racial and anti-union bias. (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 293–294, fn. 4, superseded by statute on another ground as stated in *Young v. Superior Court* (2022) 79 Cal.App.5th 138, 155–156.) It is appropriate where probable cause has not been "determined on the basis of competent, legally obtained evidence," in that some of the evidence before a grand jury was the subject of a successful motion to exclude under section 1538.5. (*People v. Sherwin* (2000) 82 Cal.App.4th 1404, 1410 (*Sherwin*).) It was proper for enforcing compliance with a statute that once forbade the state from charging a defendant with welfare fraud before it had sought restitution. (*People v. McGee* (1977) 19 Cal.3d 948, 968 & fn. 9.) And in one final example, this division reaffirmed in *People v. Gutierrez* (2013) 214 Cal.App.4th 343 (*Gutierrez*) that a nonstatutory motion to dismiss is an appropriate vehicle for raising a breach of the prosecutor's obligation to disclose exculpatory information under *Brady v. Maryland* (1963) 373 U.S. 83 before preliminary hearing. (*Gutierrez* at p. 348–349; see also *Stanton* at p. 271.)

12

I would hold that a nonstatutory motion to dismiss is also the appropriate mechanism for providing relief under *Estrada* after a preliminary hearing but before trial. Unlike a simple 995 motion, a nonstatutory motion to dismiss is not confined solely to the record at the preliminary examination. (*Gutierrez, supra*, 214 Cal.App.4th at pp. 348–349.) Additional evidence made newly relevant by adoption of an ameliorative reform like Assembly Bill 333 may be introduced. A nonstatutory motion to dismiss does not require that the court first find the newly proffered evidence to be minor, or that supplementation pursuant to section 995a had not previously occurred. Instead, evidence can be taken to the full extent required in response to the Legislature's action. Finally, a nonstatutory motion to dismiss is equally available when the prosecution has proceeded by way of indictment. (See, e.g., *Sherwin, supra*, 82 Cal.App.4th at p. 1410.)

Trial courts "possess a constitutionally conferred, inherent authority to 'create new forms of procedure' in the gaps left unaddressed by statutes and the rules of court." (*People v. Lujan* (2012) 211 Cal.App.4th 1499, 1507.) Here, no great innovation is required, as the nonstatutory motion to dismiss is a tool sitting ready at hand. The Attorney General takes the position that both a 995 motion and a nonstatutory motion to dismiss are appropriate vehicles for providing *Estrada* relief. But as part of accepting a 995 motion, the Attorney General construes section 995a(b)(1) to allow reopening of a preliminary hearing to the extent necessary to accommodate changes in the law. (See also *Mendoza, supra*, 91 Cal.App.5th at p. 58 [same].) And the Attorney General would have courts waive application of subdivision (b)(3) of section 995a when it would otherwise apply, for example because the prosecution had previously fixed a minor error in the preliminary hearing

13

evidence, or the Legislature had redefined a crime or enhancement more than once while a case was pending.  Petitioner, for his part, insists that all the constraints of section 995a must apply and the prosecution must be required to dismiss the information, or at least the affected enhancement, if the evidence necessitated by the statutory change is more than minor.  But in an unexplained concession, petitioner offers the "caveat . . . that should the prosecution elect to dismiss and re-file the charges, such a dismissal would not prevent a future prosecution under section 1387."[1]  Nothing in Assembly Bill 333 suggests the Legislature intended that we ignore these existing provisions in the Penal Code.  So, rather than performing elective surgery on section 995, section 995a, or section 1387, I would simply construe petitioner's motion as a nonstatutory motion to dismiss and allow the additional testimony without regard to the requirements of an inapplicable statute.

I recognize that *Currie v. Superior Court* (1991) 230 Cal.App.3d 83 disavowed any judicial authority to order "a testimonial remand to the magistrate, except as authorized by statute" (*id*. at p. 92), but *Currie* does not stand in the way of taking testimony in response to a motion seeking relief under *Estrada*.  Like *Stanton* and *Gutierrez*, *Currie* involved a nonstatutory motion to dismiss that was brought on grounds the prosecution had failed to disclose exculpatory evidence before preliminary hearing.  (*Currie*, at p. 88.)  The superior court purported to grant the motion, concluding the defendant's right to cross-examine an important witness had been impaired.  But instead of then dismissing the information, the trial court remanded the matter to

---

[1] With certain exceptions, section 1387 provides that if a felony case has twice been dismissed under section 995 or specified other provisions of law, it may not be refiled.

14

the magistrate to fill the evidentiary gap, allowing additional preliminary hearing testimony. (*Ibid*.) This was error, the *Currie* court held, because no appellate decision had ever authorized the reopening of a preliminary hearing except pursuant to statute. (*Id*. at p. 92.) Of course, cases are not authority for propositions they do not consider (*In re Bailey* (2022) 76 Cal.App.5th 837, 853), and *Currie* did not address the appropriate procedure for addressing a pretrial, post-preliminary hearing, ameliorative amendment to a governing statute. The remedy I propose does not, as did the superior court in *Currie*, authorize the reopening of a preliminary hearing to make up for a prosecutor's earlier mistake.

Instead, I would authorize a trial court or magistrate, as appropriate, to hold a hearing analogous to a hearing pursuant to section 995a(b)(1), but for a different purpose. Rather than to correct minor errors, evidence would be taken on the motion to dismiss only as necessary to inform the judicial determination of probable cause on elements added to the definition of the gang enhancement. If the evidence fails to establish probable cause for any new element of the enhancement, then *Estrada* entitles the petitioner to have the enhancement struck from the information. But if the new evidence, considered alongside the evidence from the preliminary hearing, establishes all elements of the enhancement as current law defines it, then the case may proceed to trial.

TUCHER, P. J.

15

Trial Court: The Superior Court of California, County of Marin

Trial Judge: Hon. Geoffrey M. Howard

Counsel: Matthew A. Siroka for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin, Charlotte Woodfork, Eric D. Share and Karen Z. Bovarnick, Deputy Attorneys General, for Real Party in Interest.